IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RACHEL KANNADAY,                              )
                                             )
              Plaintiff Garnishor,           )
vs.                                          )        Case No. 12-CV-02742-RDR-KGS
                                             )
                                             )
CHARLES BALL, Special Administrator          )
of the Estate of Stephanie Hoyt, Deceased,   )
                                             )
              Defendant,                      )
vs.                                          )
                                             )
                                             )
GEICO INDEMNITY INSURANCE COMPANY, )
                                             )
              Garnishee Defendant.           )

## GEICO INDEMNITY INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.      SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FIRST ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    FIRST STATEMENTS OF UNCONTROVERTED MATERIAL FACT . . . . . . . 2

IV.     FIRST ISSUE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      KANNADAY'S BAD FAITH CLAIM SHOULD BE DISMISSED
                BECAUSE THE KANNADAY CLAIM NEVER CREATED A
                POTENTIAL FOR ESTATE LIABILITY OR LOSS. . . . . . . . . . . . . . . . . 6

                1.      Legal Standard:  Bad faith does not apply unless the insured
                        suffers actual harm as a result of the insurer's conduct. . . . . . . 6

                2.      The Kansas non-claim statute shielded the Hoyt Estate from
                        tort claims after January 14, 2006. . . . . . . . . . . . . . . . . . . . . . . 12

                3.      The Hoyt Estate suffered no actual damages from the
                        Kannaday Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                4.      Judge Lungstrum's 2010 decision supports summary judgment
                        for GEICO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                5.      The Eleventh Circuit has held that protection of estate assets
                        by a non-claim statute precludes bad faith claims. . . . . . . . . . . 20

        B.      GEICO IS NOT REQUIRED TO "RESERVE RIGHTS" TO LIMIT ITS
                LIABILITY TO CONTRACTUAL POLICY LIMITS. . . . . . . . . . . . . . . . 22

V.      SECOND ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VI.     SECOND STATEMENTS OF UNCONTROVERTED MATERIAL FACT . . . . . 24

VII.    SECOND ISSUE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        A.      EXECUTION OF THE SETTLEMENT AGREEMENT BREACHED
                ADMINISTRATOR BALL'S DUTY TO COOPERATE WITH GEICO. . . 26

                1.      The Administrator's execution of the Settlement Agreement
                        jeopardized GEICO's ability to defend the Kannaday lawsuit. . . 26

i

2.      The insured has both a contractual and a "mutual fiduciary" duty to cooperate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

        a.      GEICO policy imposes a contractual duty to cooperate. .  27

        b.      Kansas imposes a "mutual fiduciary" duty to cooperate  .  28

        c.      Both duties are imposed on the administrator of a decedent's estate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

3.      Assisting Plaintiff's counsel by executing unfair settlements breached insured's duty to cooperate.  . . . . . . . . . . . . . . . . . . . 30

        a.      Assistance to Plaintiff's counsel breaches duty.  . . . . . . . 30

        b.      Entering unfair settlement breaches duty. . . . . . . . . . . . 31

B.      BREACH OF DUTY TO COOPERATE TERMINATES AN INSURED'S RIGHT TO COVERAGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

1.      An insured's failure to cooperate can terminate insurance coverages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

2.      The Administrator's failure to cooperate terminated the Hoyt Estate's rights under the GEICO policy. . . . . . . . . . . . . . . . . . . 33

3.      Because the Estate's insurance coverage rights were terminated, there was nothing left to assign.  . . . . . . . . . . . . . . 34

VIII.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## **TABLE OF AUTHORITIES**

<u>Page</u>

**Cases**

*Allied Mut. Ins. Co. v. Moeder*, 30 Kan. App. 2d 729, 48 P.3d 1 (2002) . . . . . . . . . .  23

*Allstate Ins. Co. v. Campbell,* 639 A.2d 652 (Md. 1994) . . . . . . . . . . . . . . . . . . . . . . .  7

*Anco Insulations, Inc. v. AIG Premier Ins. Co.,* 2013 WL 773621
    (M.D. La. Feb. 28, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806,
    934 P.2d 65 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Bagley v. Lumbermens Mut. Cas. Co.,* P.2d 469 (Colo. 1936) . . . . . . . . . . . . . . . . .  30

*Bennett v. Conrady*, 180 Kan. 485 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

*Bollinger v. Nuss,* 202 Kan. 326, 449 P.2d 502 (1969) . . . . . . . . . . .  6, 7, 15, 16, 28, 29

*Bourget v. Gov't Employees Ins. Co.*, 456 F.2d 282 (2nd Cir. 1972) . . . . . . . . . . . . .  10

*Bridges v. Bentley*, 1989 WL 134939 (D. Kan.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Buckner v. Buckner,* 241 N.W. 342 (Wis. 1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

*Castoreno v. Western Indem. Co., Inc.,*  213 Kan. 103, 515 P.2d 789 (Kan. 1973) . .  29

*Coleman v. Holecek*, 542 F.2d 532, 537 (10th Cir. 1976) . . . . . . . . . . . . . . . . . . . . .  29

*Continental Cas. Co. v. Multiservice Corp.,* 2009 WL 1788421
    (D. Kan. June 23, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

*Dahlin v. State Farm Mut. Auto. Ins. Co.,* 2003 WL 22594412 (D. Kan.) . . . . . . . . . . .  1

*Elliott v. Metro. Cas. Ins. Co.,* 250 F.2d 680
    (10th Cir. Kan. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28, 30, 31, 33

*Estate of Tracy*, 36 Kan. App. 2d 401, 140 P. 3d 1045 (2006) . . . . . . . .  13, 14, 16, 19

*Farmers Ins. Exch. v. Schropp*, 222 Kan. 612, 567 P.2d 1359 (1977) . . . . . . . . .  11, 32

*Gatewood v. Bosch*, 2 Kan. App. 2d 474, 581 P.2d 1198 (1978) . . . . . . . . . . . . . . .  19

*Gatlin v. Hartley*, 29 Kan. App. 2d 318, 26 P.3d 1284 (2001) . . . . . . . . . . . . . . . . . . 17

*Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990) . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Harris v. Richards*, 254 Kan. 549, 867 P.2d 325 (1994) . . . . . . . . . . . . . . . . . . . 14, 19

*Heinson v. Porter,* 244 Kan. 667 (1989) . . . . . . . . . . . . . . . . . . . . . . . 6-8, 12, 15, 18, 21

*Henke v. Iowa Home Mut. Cas. Co.*, 250 Iowa 1123, 97 N.W.2d 168 (1959) . . . . . . 32

*Hennes Erecting Co. v. Nat'l Union Fire Ins. Co.*, 813 F.2d 1074
   (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Henry v. Johnson*, 191 Kan. 369 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hillman v. Colonial Penn Ins. Co.*, 19 Kan. App. 2d 375, 869 P.2d 248,
   rev. denied 255 Kan. 1001 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Jackson Trak Group, Inc., v. Mid States Port Auth.,* 242 Kan. 683 (1988) . . . . . . . . . 15

*Jameson v. Farmers Mut. Auto. Ins. Co., Inc.,* 181 Kan. 120 (1957) . . . . . . . . . . . . 33

*Jarvis v. Farmers Ins. Exch.,* 948 P.2d 898 (Wyo. 1997) . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. State Farm Mut. Auto. Ins. Co.,* 641 F. Supp. 2d 748 (C.D. Ill. 2009) . . . 29

*Kannaday v. Ball,* 2010 WL 2346368 . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 22, 32

*Kannaday v. Ball,* 44 Kan. App. 2d 65 (2011) . . . . . . . . . . . 4, 14, 15, 17-20, 25, 26, 34

*Love v. Fire Ins. Exch.,* 221 Cal. App. 3d 1136 (1990) . . . . . . . . . . . . . . . . . . . . . . . 34

*May v. Illinois Nat'l Ins. Co.*, 190 F.3d 1200 (1999) . . . . . . . . . . . . . . . . . . . . . . 20, 21

*May v. Illinois National Ins. Co.*, 245 F.3d 1281 (2001) . . . . . . . . . . . . . . . . . . . . . . 21

*Metro. Casualty Ins. Co. of N.Y. v. Johnston,*146 F. Supp. 5
   (D. Kan. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Mgmt. Assoc. Inc. v. Miller*, 1994 WL 362206 (Kan. D.C.) . . . . . . . . . . . . . . . . . . . . 17

*Motorists Mut. Ins. Co. v. Said,* 590 N.E.2d 1228 (Ohio 1992) . . . . . . . . . . . . . . . . . 8

*Nelson v. Nelson*, 288 Kan. 570 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nichols v. Marshall,* 491 F.2d 177 (10th Cir. Kan. 1974) . . . . . . . . . . . . . . . . . . . 34, 35

*Pacific Employers Ins. Co., v. P.B. Hoidale Co., Inc.,* 796 F. Supp. 1428
  (D. Kan. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Phelps v. State Farm Mut. Auto. Ins. Co.,* 2010 WL 2471845
  (W.D. Ky. June 16, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Polselli v. Nationwide Mut. Fire Ins. Co.,* 126 F.3d 524 (3rd Cir. 1997) . . . . . . . . . . 34

*Ram Co. v. Estate of Kobbeman,* 236 Kan. 751 (1985) . . . . . . . . . . . . . . . . . . . . . . 14

*Rector v. Husted*, 214 Kan. 230, 238, 519 P.2d 634, 641 (Kan. 1974) . . . . . . . . . . . 29

*Roach v. Estate of Ravenstein,* 326 F. Supp. 830 (S.D. Iowa 1971) . . . . . . . . . . 32, 33

*Ryan v. Williams, Adm'r,* 29 Kan. 497 (1883) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sargent v. Johnson*, 551 F.2d 221 (8th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . 31, 34

*Shapero v. Allstate Ins. Co.,* 14 Cal. App. 3d 433 (1971) . . . . . . . . . . . . . . . . . . . . . 29

*Sours v. Russell*, 25 Kan. App. 2d 620, 967 P.2d 348 (1998) . . . . . . . 9, 10, 15, 18, 21

*Spencer v. Aetna Life & Cas. Ins. Co.,* 227 Kan. 914, 611 P.2d 149 (1980) . . . . . 6, 29

*State Auto. Mut. Ins. Co. v. York,* 104 F.2d 730 (4th Cir. 1939) . . . . . . . . . . . . . . . . 31

*State Farm Mut. Auto. Ins. Co. v. Bonacci,* 111 F.2d 412 (8th Cir. 1940) . . . . . . . . . 30

*Stephens v. Dairyland Ins. Co.,* 2013 WL 3771228
  (M.D. Fla. July 17, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Stetler v. Fosha,* 809 F. Supp. 1409 (D. Kan. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Storer v. Ocean Accident & Guarantee Corp.,* 80 F.2d 470 (1935) . . . . . . . . . . . . . 30

*Tilzer v. Davis*, 288 Kan. 477, 204 P.3d 617 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Trader's & Gen. Ins. Co., v. Rudco Oil & Gas Co.,* 129 F.2d 621
  (10th Cir. Okla. 1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States Fid. & Guar. Co. v. Wyer,* 60 F.2d 856 (10th Cir. 1932) . . . . . . . . . . . 33

*Vorhees v. Baltazar*, 283 Kan. 389, 153 P.3d 1227 (2007) . . . . . . . . . . . . . . . . . . . . . . 5

*Wade v. Emcasco Ins. Co.*, 483 F.3d 657 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

*Watson v. Jones,* 227 Kan. 862 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*West American Ins. Co. v. RLI Ins. Co.*, 2009 WL 3327203
   (W.D. Mo. Oct. 8, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Western Food Prod's Co. v. United States Fire Ins. Co.*, 10 Kan. App. 2d 375,
   699 P.2d 579 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Williams v. American Family Mut. Ins. Co.*, 101 F. Supp. 2d 1337 (D. Kan. 2000) . 7, 17

*Wirtz v. State Farm Mut. Auto. Ins. Co.,* 2009 WL 2163617
   (W.D. Okla.  July 13, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## Statutes

K.S.A. 59-2239 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12-14, 16

## Rules

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## Other Authorities

14 COUCH ON INSURANCE 3d, § 202.74 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

8 APPLEMAN, *Insurance Law and Practice,* § 4771 (1981) . . . . . . . . . . . . . . . . . . . . . 33

Annot. 1 A.L.R.3d 1139 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

INSURANCE CLAIMS & DISPUTES 6TH, § 2:14 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

KANSAS ESTATE ADMINISTRATION HANDBOOK, § 4.7 (6th Ed. 1999 Supp.) . . . . . . . . . . 14

### GEICO INDEMNITY INSURANCE COMPANY'S
### MEMORANDUM IN SUPPORT OF MOTION FOR
### SUMMARY JUDGMENT

The Garnishee Defendant, GEICO Indemnity Insurance Company ("GEICO"), submits the instant Memorandum in Support of its Motion for Summary Judgment. This Memorandum establishes that GEICO is entitled to judgment as a matter of law on Rachel Kannaday's "bad faith" claim because:

> (1)    the Hoyt Estate never had a potential for liability or loss associated with the claim; and

> (2)    the Administrator breached his contractual and "mutual fiduciary" duties to cooperate with GEICO.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

Motions for summary judgment will be filed by both the Plaintiff-Garnishor and the Defendant-Garnishee. The standards for summary judgment in a "bad faith" action where both sides have moved for summary judgment were well stated by Judge Murguia in *Dahlin v. State Farm Mut. Auto. Ins. Co.*, 2003 WL 22594412, *5 (D. Kan.).

.

1

## II.  FIRST ISSUE

The Kansas non-claim statute limits a decedent's estate asset liability to claims filed within six months of death.  Paul Hasty presented the Kannaday claim well after that six-month claim period expired; thus, Hoyt Estate assets were never at risk to pay any portion of the Kannaday claim.  If the Estate of Hoyt never had any potential loss liability associated with the Kannaday claim, can Hoyt's insurer be held liable in excess of policy limits for negligence or bad faith?

## III.  FIRST STATEMENTS OF UNCONTROVERTED MATERIAL FACT

1.      **On July 13, 2005, Stephanie Hoyt's car was hit broadside by a semi-truck/trailer while Hoyt was improperly entering Interstate 35 from a rest area.  (Doc. 67-2, Police Report.)  Stephanie Hoyt was killed instantly. (*Id.*) Her passengers, Genevie Gold, Sharon Wright, and Rachel Kannaday, were very seriously injured. (*Id.*)**[1]  All were college students at the time.

2.      At the time of the accident Ms. Hoyt was insured by GEICO Indemnity Company ("GEICO"), Policy No. 4034676470 (Doc. 67-3), which had bodily injury liability limits of $25,000 per person and $50,000 per accident. (*Id.*)

3.      It quickly became apparent that the passengers' medical expenses would far exceed the policy limits.  On August 10, 2005, GEICO received Wesley Medical Center lien notices of $158,929.49 for Ms. Kannaday (Doc. 67-4) and $95,499.26 for Ms. Wright. (Doc. 67-4.)

---

[1]      Although 21 paragraphs of uncontroverted facts have been provided for purposes of context, only the emphasized paragraphs (1, 11 and 13) are required for a summary judgment determination of the first issue.

4.     In early August 2005, GEICO learned that Ms. Gold had serious injuries, which included a lacerated spleen, left eye nerve damage, right lung collapse, left side paralysis causing walking difficulties, speech difficulties requiring therapy, and psychological issues also requiring therapy. (Doc. 67-5, GAL-0013, 0014, 0019.)[2]

5.     GEICO also learned that Ms. Wright had a fractured rib, fractured pelvis and fractured chest bone. Ms. Wright also suffered a concussion, required a spleen removal, and remained confined to a wheelchair. For almost one month after the accident, Ms. Wright could not roll over in bed. (Doc. 67-5, GAL-0008, 0014.)

6.     GEICO also learned that Ms. Kannaday suffered a fractured pelvis, fractured vertebra, broken left arm, broken left hand, internal damage and, most critically, a spinal cord injury. (Doc. 67-5, GAL-0012.)

7.     On August 11, 2005, GEICO advised Ms. Hoyt's father that the liability resulting from the accident would far surpass the policy limits. (Doc. 67-5, GAL-0014; Doc. 67-6, GCF-0105.)

8.     On November 4, 2005, GEICO made offers to Hoyt's passengers which would exhaust GEICO's policy limits by:

(a)     offering attorney Doug Greenwald a $25,000 settlement on behalf of Ms. Gold (Doc. 67-6, GCF-0103; Doc. 67-5, GAL-0028); and

---

[2]     The document numbers identify their production origin:
GAL - GEICO Activity Log
GCF - GEICO Claim File
FGCK - Fleeson, Gooing, Coulson & Kitch law file
Estate - Hoyt Estate pleadings

(b)     offering the remaining $25,000 available to Ms. Wright and Ms. Kannaday through individual offers of $12,500 each.  (Doc. 67-5, GAL-0028.)

9.     On December 1, 2005 GEICO telephoned, and again on December 20, 2005 GEICO wrote to Rachel Kannaday repeating the $12,500 offer.  (Doc. 67-6, GCF-0010; GCF-0102; Doc. 67-5, GAL-0031.)

10.     Doug Greenwald telephonically accepted the $25,000 offer to Gold during this time period.  (Doc. 67-7, FGCK 0517-19.)

11.     **On January 14, 2006, six months had passed since the death of Ms. Hoyt.  Thereafter, the Kansas non-claim statute, K.S.A. 59-2239, statutorily protected Ms. Hoyt's assets from creditors.** *Kannaday v. Ball*, 44 Kan. App. 2d 65, Syl. 1, 234 P.3d 826 (2011).

12.     However, other than the liability coverage provided by Ms. Hoyt's GEICO policy, there were no assets within or without the Estate.  (Doc. 67-8, Ball Depo. of 09/30/09, 51:15-17; Doc. 67-9, Estate-0009-13.)

13.     **On January 19, 2006, Paul Hasty sent his initial demand letter requesting the $25,000 policy limits for his client, Ms. Kannaday, without medical records or a detailed explanation. (Doc. 67-6, GCF-0097.)**

14.     On Friday, February 24, 2006, Paul Hasty reiterated the GEICO $25,000 policy limits demand in his first letter to Lyndon Vix.  (Doc. 67-16-1, Hasty Depo. of 09/05/13, Ex. 8).

15.     On Saturday, February 25, 2006, Paul Hasty signed a Fifty Percent (50%) contingency fee agreement with Rachel Kannaday.   (Doc. 67-16-2, Hasty Depo. of 09/05/13, Ex. 14.)

16.     On Monday, February 27, 2006, Paul Hasty sent Lyndon Vix a letter withdrawing the $25,000 policy limits demand.  (Doc. 67-16-3, Hasty Depo. of 09/05/13, Ex. 13.)

17.     On March 17, 2006, Ms. Kannaday, through Mr. Hasty, petitioned for appointment of Charles Ball as the Special Administrator of the Estate of Stephanie Hoyt in Case No. 06P50 of Wyandotte County.  (Doc. 67-9, Petition, Estate-0001-3.)

18.     On March 17, 2006, Ms. Kannaday, through Mr. Hasty, filed suit against the Estate of Hoyt in Wyandotte County's Case No. 06CV497.[3]   (Doc. 67-10, Petition, Kannaday-0001-2.)

19.     On March 23, 2006, GEICO filed an interpleader in the United States District Court for the District of Kansas.   The interpleader named the remaining passengers (Ms. Kannaday and Ms. Wright), the truck driver and company involved in the accident (Charles Church and Chris Truck Line), and potential lien claimants to the proceeds (Liberty Mutual, Metropolitan Life, and Wesley Medical Center). (Doc. 67-11, Case No. 06-1067-JTM Doc. 1-1.)  The $25,000 of remaining GEICO policy coverage was tendered to

---

[3]     Charles Ball was not appointed as Administrator of the Estate of Hoyt until May 4, 2006.  At the time suit was filed and service purportedly made, the Estate of Hoyt lacked the capacity to be sued.  An estate cannot be sued unless the estate has an administrator or executor appointed by the court.  *Ryan v. Williams, Adm'r,* 29 Kan. 497, 498-500 (1883); *Vorhees v. Baltazar,* 283 Kan. 389, 397, 153 P.3d 1227, 1233 (2007).  Thus, the GEICO federal court interpleader preceded the commencement of the Kannaday litigation.

the Registry of the Court on March 31, 2006. (Doc. 67-11, Case No. 06-1067-JTM Doc. 8.)

20.    On February 21, 2008, Judge Marten, in the federal court interpleader, awarded GEICO's $25,000 to Wesley Medical Center for its hospital lien on Ms. Kannaday's medical expenses. (Doc. 67-11, Case No. 06-1067-JTM Doc. 69.)

21.    Judge Marten's award benefitted Ms. Kannaday, who had the $158,929.49 lien of Wesley Medical Center reduced by $25,000. Wesley Medical Center continued pursuit of the recovery of its remaining lien. (Doc. 67-12, Preheim Depo. 22:19-23:12, 26:2-10.)

## IV.  FIRST ISSUE ARGUMENT

**A.    KANNADAY'S BAD FAITH CLAIM SHOULD BE DISMISSED BECAUSE THE KANNADAY CLAIM NEVER CREATED A POTENTIAL FOR ESTATE LIABILITY OR LOSS.**

### 1.    Legal Standard:  Bad faith does not apply unless the insured suffers actual harm as a result of the insurer's conduct.

The Kansas Supreme Court explains that the "common thread" in bad faith cases:

. . . is that the wrongful conduct of the insurer has caused liability of the insured to a third party which he or she would not have had but for the wrongful conduct of the insurer.  Typical of such cases is where the insurer unreasonably refuses to settle with the injured party within policy limits, and the insured is ultimately faced with a judgment in excess of the policy limits.

*Heinson v. Porter,* 244 Kan. 667, 675 (1989).  *See also, Spencer v. Aetna Life & Cas. Ins. Co.,* 227 Kan. 914, 922, 611 P.2d 149 (1980)(when exercising exclusive control of the defense, the insurer is "in a position to expose the insured to a judgment in excess of policy limits through its unreasonable refusal to settle a case"); *Bollinger v. Nuss,* 202 Kan. 326, 333-34, 449 P.2d 502 (1969)("Since the absolute control of the defense is turned over

6

to the insurer so that it may reject settlements within policy limits, and as a result, expose the insured to payment of all sums in excess of policy limits, surely it is not asking too much to require the insurer to act without negligence.").[4]   The tort of bad faith serves to discourage the insurer from gambling with the insured's money.   *See, e.g., Pacific Employers Ins. Co., v. P.B. Hoidale Co., Inc.,* 796 F. Supp. 1428, 1433 (D. Kan. 1992)("By 'gambling with . . . the insured's money,' the [insurer] bears the risk of its gamble: liability for the full excess judgment.")(Citation omitted).

Many jurisdictions, like Kansas, recognize that a bad faith claim cannot accrue unless the insured is exposed to excess liability as a result of the insurer's conduct.   *See, Wirtz v. State Farm Mut. Auto. Ins. Co.,* 2009 WL 2163617 at *7 (W.D. Okla.   July 13, 2009)(bad faith claim only accrued at the point when insured was exposed to excess liability due to insurer's conduct); *Jarvis v. Farmers Ins. Exch.,* 948 P.2d 898, 902 (Wyo. 1997)("A cause of action by an insured against the insurer for a failure, in bad faith, to settle a claim will not accrue prior to the entry of a judgment against the insured in excess of policy limits."); *Allstate Ins. Co. v. Campbell,* 639 A.2d 652, 653-56, 659 (Md. 1994)(Complaint failed to state a claim upon which relief could be granted because insurer settled the case prior to trial, thus eliminating any possibility of excess judgment); *Stephens*

---

[4]         Twenty years before *Heinson,* the Kansas Supreme Court addressed bad faith in *Bollinger v. Nuss,* stating an **"insurer does not act in bad faith if it honestly believes, and has good cause to believe, that any probable liability will be less than policy limits."**   *Bollinger v. Nuss,* 202 Kan. 326, Syl. 8 (1969)(emphasis added); *Stetler v. Fosha,* 809 F. Supp. 1409, 1423 (D. Kan. 1992)(same).   Hence, even if the insurer turns out to be wrong and the insured is found to have liability that exceeds policy limits, the insurer is not guilty of bad faith if it honestly believed, and had good cause to believe, that any probable liability would be less than policy limits.   In any event, **"something more than mere error of judgment is necessary to constitute 'bad faith' in Kansas."**   *Bollinger, supra*; *Wade v. Emcasco Ins. Co.,* 483 F.3d 657, 666 (2007); *Williams v. American Family Mut. Ins. Co.,* 101 F. Supp. 2d 1337, 1344 (D. Kan. 2000).

*v. Dairyland Ins. Co.,* 2013 WL 3771228 at *3 (M.D. Fla. July 17, 2013)("'The essence of a 'bad faith' insurance suit . . . is that the insurer breached its duty to its insured by failing to properly or promptly defend the claim (which may encompass its failure to make a good faith offer of settlement within the policy limits)–all of which results in the insured being exposed to an excess judgment.'")(Citation omitted).

Most important to the present issue, Kansas bad faith damages only apply if the insurer's conduct causes actual harm to the insured. *Id.,* at 676. The *Heinson* court emphasized this strict requirement, stating:

> **Generally speaking, no matter how miserably an insurance company has treated its insured in handling a third party's claim against the insured, its liability is limited to the <u>actual damage</u> suffered by the insured as a result of the insurer's conduct.** Therefore, if an insurance company wholly abandons its insured and through his or her own endeavors the insured receives a verdict in his favor, his or her claim against the insurance company would be limited to attorney fees and other costs the insured has incurred in defending the action.

*Id.* (Emphasis added.)  Highly summarized: if <u>no damages</u>, then <u>no bad faith</u>.

This, too, follows the law of many jurisdictions. *See also, Anco Insulations, Inc. v. AIG Premier Ins. Co.,* 2013 WL 773621 at *4 (M.D. La. Feb. 28, 2013)(granting summary judgment dismissal of bad faith claims due to Anco's failure "to demonstrate the actual damages incurred by Anco" as a result of insurer's alleged bad faith conduct); *Phelps v. State Farm Mut. Auto. Ins. Co.,* 2010 WL 2471845 at *3 (W.D. Ky. June 16, 2010)(a "condition precedent" to bringing a bad faith action is that the insured suffered actual damages as a result of the insurer's alleged bad faith conduct); *Motorists Mut. Ins. Co. v. Said,* 590 N.E.2d 1228, 1236 (Ohio 1992)(under the tort of bad faith, "the insured may recover compensatory damages for harm proximately caused.").

If an insurance carrier acts negligently or in bad faith in handling a claim against its insured, the amount of coverage provided by the insured's policy does not increase. Rather, the insured is entitled to assert a breach of contract claim against a carrier and, if successful, can recover **damages for that contractual breach**.   This is not the enforcement of the original judgment obtained against the insured; rather, that judgment simply provides the basis for the insured's contractual damages.

In *Sours v. Russell*, 25 Kan. App. 2d 620, 967 P.2d 348 (1998), the injured party obtained a judgment against the tortfeasor that exceeded the tortfeasor's insurance coverage and then sought to collect the entire judgment from the tortfeasor's insurance carrier by way of garnishment, arguing that the carrier had failed to provide a good faith defense to the insured.  25 Kan. App. 2d at 621.  The court first characterized the nature of the plaintiff's claim:

> We begin our analysis by noting that Sours is pursuing a contract claim. Sours, as a judgment creditor, stands in the shoes of Russell, the judgment debtor, to pursue a claim that American States breached its implied agreement to use reasonable care and act in good faith in defending or settling claims against its insured.  (Citations omitted.)

> As a general rule, a party seeking damages for breach of warranty must prove the warranty, the breach thereof, and the loss that resulted from the breach.  (Citations omitted.)

25 Kan. App. 2d at 622.  The court went on to engage in an analysis of how the damages for breach of contract are measured in this context, ultimately stating:

> [W]e conclude that an insurer that acts negligently or in bad faith in defending a case against its insured is liable for the ***damages*** traceable to its conduct.  The party asserting such a breach of warranty claim has the burden of proving ***the amount of damages***.  (*Id.* at 625; emphasis added.)

* * *

9

[W]e conclude that the district court did not err in entering judgment for American States on Sours' negligence/bad faith claim, holding that Sours was required to prove causation and damages and failed to do so. (*Id.* at 628.)

The emphasis upon the insured's contract damages was also made clear in

*Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 842, 934 P.2d 65

(1997), where the court said:

An insured's action for damages for breach of an insurer's implied good faith settlement obligation is contractual in nature. (citations omitted) . . .

The appropriate phrasing of this issue is whether plaintiffs are entitled to recover any amount in excess of NPIC's policy limit of $25 million *as breach of contract damages*.

(Emphasis added.)   Again, highly summarized: bad faith requires that the insurer's

contractual breach cause damages to the insured.

*Heinson*, *Sours*, and *Associated Wholesale Grocers* could lead to the logical

conclusion that bad faith damages only exist where the insured suffers actual loss of

money or assets resulting from the insurer's conduct.  This is the "prepayment rule" which

has not been adopted in Kansas.  Prepayment rule states hold that if an insured is

bankrupt or assetless, no losses can accrue, hence no bad faith cause of action can exist.

The rule was discussed by Judge Friendly in *Bourget v. Gov't Employees Ins. Co.*, 456

F.2d 282, 285 (2nd Cir. 1972).  There, Judge Friendly stated:

. . . what gives rise to the duty [to exercise good faith] and measures its extent is the conflict between the insurer's interest to pay less than the policy limits and the insured's interest not to suffer liability for any judgment exceeding them.   In the rare instances when the insured has no such interest, there can be no conflict and the duty does not arise.

10

The "prepayment rule" has undemocratic results which do not "serve the ends of justice." *Glenn, infra* at 316. If bankrupt or assetless insureds are considered unharmed such that they can have no "bad faith" claim against an insurer, they may be treated badly with impunity. The liability standard of an insured's treatment by an insurance company should not be a function of wealth. Because of such anomalies, Kansas has adopted the "judgment rule." In *Farmers Ins. Exch. v. Schropp,* 222 Kan. 612, 567 P.2d 1359 (1977), the Kansas Supreme Court held that bad faith or negligent failure to settle could be asserted against an insurer by an insolvent insured. In *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990), the Kansas Supreme Court further stated that a bad faith action would lie, "whether or not the insured has paid or can pay an excess judgment." (*Id.* at 624.)

However, an insured's immunity from loss is quite different from insolvency. Immunity is not a function of wealth or ability to pay. Immunity is a function of legislative policy. When all claims against Hoyt Estate assets became barred because of the Kansas non-claim statute, the Estate became immune. The Estate's immunity eliminated potential insured liability and with it the conflict of interest on which bad faith is predicated. The Estate's assets became invulnerable to the Kannaday tort claims. There is no "conflict of interest" where the insured's potential loss has been eliminated. Kannaday's claim presented no threats on Hoyt Estate assets. The Kansas non-claim statutory immunity is quite different than bankruptcy or insolvency, because it eliminates all threat of damages.

The Kansas concept that bad faith does not exist where the insured has no threat of loss was properly applied and decided in *West American Ins. Co. v. RLI Ins. Co.*, 2009 WL 3327203 at *2, 3 (W.D. Mo. Oct. 8, 2009). There, applying Kansas bad faith law, the

11

Missouri federal court ruled that if the insured was protected by a "high/low" arbitration agreement where the "high" equaled policy limits, the insured's assets were never at risk. Because the assets were not at risk, the insured was legally precluded from pursuit of a bad faith action.  Citing *Heinson* and *Glenn*, the court stated:

> In *Heinson* . . ., the Kansas Supreme Court held that "[a]ny liability of an insurance company in excess of its policy limits must be based upon wrongdoing by the insurer *which has caused loss to its insured.*" . . .
>
> * * *
>
> . . . unlike the insured in *Glenn*, Miller was not forced to bargain away his rights in order to gain protection of his assets--a jury could conclude West American protected Miller's assets with the alleged high/low agreement. Thus, the policy behind bad faith actions would not be supported if West American were to be held liable despite the existence of the alleged high/low agreement protecting Miller.

(*Id.* at *2; emphasis in text.)

### 2. The Kansas non-claim statute shielded the Hoyt Estate from tort claims after January 14, 2006.

In Kansas, any and all claims against the assets of a decedent's estate must be presented within the time restraints set forth in the Kansas non-claim statute, found at K.S.A. 59-2239(1), which states:

> All demands, including demands of the state, against a decedent's estate, whether due or to become due, whether absolute or contingent, including any demand arising from or out of any statutory liability of decedent or on account of or arising from any liability as surety, guarantor or indemnitor, and including the individual demands of executors and administrators, shall be forever barred from payment unless demand is presented within the later of: (a) four months from the date of first publication of notice under K.S.A. 59-2236, and amendments thereto; or (b) if the identity of the creditor is known or reasonably ascertainable, 30 days after actual notice was given, except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control. **No creditor shall have any claim against or lien upon the property of a decedent other than liens existing at the date of the decedent's death, unless a petition is filed for the probate**

> **of the decedent's will pursuant to K.S.A. 59-2220 and amendments thereto or for the administration of the decedent's estate pursuant to K.S.A. 59-2219 and amendments thereto within six months after the death of the decedent** and such creditor has exhibited the creditor's demand in the manner and within the time prescribed by this section, except as otherwise provided by this section.

K.S.A. 59-2239(1) (emphasis added).  In *Nelson v. Nelson*, 288 Kan. 570 (2009), the

Kansas Supreme Court stated:

> K.S.A. 59-2239 imposes a special statute of limitations governing claims against a decedent's estate, and it operates as a complete bar to all demands against a decedent's estate that are not timely filed.

*Id.* at Syl. 18.  "The primary purpose for K.S.A. 59-2239 is the speedy settlement of the

estates in the interest of creditors, heirs, legatees, and devisees, and to settle titles to real

estate."  *Estate of Tracy*, 36 Kan. App. 2d 401, 405, 140 P. 3d 1045 (2006).

The non-claim statute does not preclude a plaintiff from commencing litigation

against an estate after the non-claim period has expired; rather, it bars a plaintiff from

obtaining a judgment against the assets of the estate.  With regards to tort actions, this

principle is embodied in K.S.A. 59-2239(2), which states:

> **Nothing in this section shall affect or prevent the enforcement of a claim arising out of tort against the personal representative of a decedent within the period of the statute of limitations provided for an action on such claim.** For the purpose of enforcing such claims, the estate of the decedent may be opened or reopened, a special administrator appointed, and suit filed against the administrator within the period of the statute of limitations for such action. **Any recovery by the claimant in such action shall not affect the distribution of the assets of the estate of the decedent unless a claim was filed in the district court within the time allowed for filing claims against the estate under subsection (1) or an action commenced as provided in subsection (2) of K.S.A. 59-2238 and amendments thereto.**  The action may be filed in any court of competent jurisdiction and the rules of pleading and procedure in the action shall be the same as apply in civil actions.  Any such special administration shall be closed and the special administrator promptly discharged when the statute

of limitations for filing such actions has expired and no action has been filed or upon conclusion of any action filed. All court costs incurred in a proceeding under this subsection shall be taxed to the petitioner.

K.S.A. 59-2239(2) (emphasis added).

Accordingly, "a claimant who failed to assert a timely claim under K.S.A. 59-2239(1) cannot look to the assets of the decedent's estate to satisfy any resulting judgment." *Kannaday v. Ball,* 44 Kan. App. 2d 65, Syl. 2 (2011); *Harris v. Richards*, 254 Kan. 549, 550-551, 867 P.2d 325, 326 (1994)(claim filed against estate after non-claim statute ran was "limited to applicable insurance proceeds."); *Estate of Tracy*, 36 Kan. App. 2d 401, Syl. 4-6, 140 P. 3d 1045 (2006)("A non-claim statute deprives a court of jurisdiction if a claim is not timely filed. . .. It operates as a complete bar to all demands against a decedent's estate that are not timely filed."). Under such circumstances, a judgment may only be satisfied by available insurance proceeds. *Kannaday,* at Syl. 3 ("An automobile liability insurance policy that insured the decedent is not an asset of the decedent's estate which is protected by K.S.A. 59-2239(1)."); *Ram Co. v. Estate of Kobbeman,* 236 Kan. 751, 764 (1985)(If an action against an estate "is not filed within the nonclaim limitation period the claimant may look only to the security."); *Harris v. Richards,* 254 Kan. 549, 550 (1994)(same); KANSAS ESTATE ADMINISTRATION HANDBOOK, § 4.7 (6th Ed. 1999 Supp.) ("K.S.A. 59-2239(2) does not affect or prevent the enforcement of a tort claim against the personal representative of a decedent within the period of the statute of limitation for an action on such claim, but only insurance proceeds can be reached if the claim was not filed within the nonclaim period.").

In the underlying *Kannaday* litigation, the Kansas Court of Appeals determined that

K.S.A. 59-2239(1) shielded the Hoyt Estate assets from Kannaday's claim, stating:

> Kannaday failed to present her demand within the requisite time, and she
> cannot now demand that the Estate's personal representative pay her claim
> from the assets of the Estate.... Notwithstanding the settlement agreement,
> Kannaday could not execute on Estate assets because of the bar of the
> nonclaim statute, K.S.A. 59-2239.

*Kannaday v. Ball,* 44 Kan. App. 2d 65, 69, 73 (2011).  Kannaday conceded this point.  *Id.,*

at 73 ("[Kannaday], admittedly, cannot collect [Kannaday's] judgment from 'estate

assets.'").  The law of the case bars relitigation of this issue.  *See, Jackson Trak Group,*

*Inc., v. Mid States Port Auth.,* 242 Kan. 683, 690 (1988)(the doctrine of res judicata bars

relitigation of an issue or claim that has been conclusively determined in an earlier action).

### 3.    The Hoyt Estate suffered no actual damages from the Kannaday Claims.

The only determination left for this Court to make is that, as a matter of law, bad

faith liability could not result because the Hoyt estate did not–and could not–suffer any

actual harm by anything GEICO did or failed to do after January 14, 2006, the date the

Kansas non-claim statute barred Estate assets liability to Kannaday.  GEICO was not

gambling with Hoyt's money.  GEICO could not gamble with the Estate's assets as they

were already protected from any liability by the non-claim statute.  The only money at risk

was that available through Hoyt's GEICO policy.  Said differently, after the non-claim period

expired without claim by Kannaday, the Hoyt estate had no possible liability to Kannaday

beyond GEICO's policy limits.  As such, it was impossible for the Hoyt estate to suffer any

actual harm as a result of GEICO's conduct.  Pursuant to *Heinson, Bollinger* and *Sours,*

Kannaday's bad faith claim should be dismissed because no "actual damage" could result from the insurer's conduct.[5]

Paul Hasty's first settlement demand on behalf of Kannaday was presented in his letter of January 19, 2006.  (Doc. 67-6, GCF-00097.)  On that demand date, the Kansas non-claim statute already jurisdictionally barred claims against assets of the Estate of Hoyt. *Estate of Tracy*, 36 Kan. App. 2d 401, Syl. 4-6, 140 P.3d 1045 (2006).  Kannaday's primary claim has been that the failure to settle (i.e. obtain a release) in exchange for tender of $25,000 policy limits was an act of bad faith.  However, on the very day of Mr. Hasty's first settlement demand upon GEICO, Kannaday could not imperil the assets of the Estate of Hoyt because the bar of the Kansas non-claim statute, K.S.A. 59-2239, was already in place.  The bar of the Kansas non-claim statute provided better insulation than any release executed by a single tort claimant, because the non-claim statute deprived a court of jurisdiction over the claim.  *Id.*  The Kansas non-claim statute acted to bar all claims by any and all unsecured creditors or tort claimants to the Hoyt Estate.  The Estate was already insulated and its assets were already secure; anything GEICO did or did not do, could do or could not do, would not alter that fact.  Mr. Hasty's settlement demand offered nothing to the Estate because the Estate was already protected.  Mr. Hasty's proffered settlement agreement with the Estate of Hoyt offered no consideration at all.  The Estate was already

_____

[5]      In *Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502 (1969), the Kansas Supreme Court presented the eight factors to be used in evaluating an insured's claim of bad faith.  Here, the Kansas non-claim statute renders the sixth factor dispositive.  That factor, "the amount of financial risk to which each party is exposed in the event of a refusal to settle," clearly reflects that GEICO's settlement attempts presented absolutely no risk to the insured, the Estate of Stephanie Hoyt, because the Kansas non-claim statute provided immunity and barred such claim from reaching the assets of the Estate.

immune.  As stated in *Kannaday v. Ball*, 44 Kan. App. 2d 65, 234 P.3d 826 (2010), ". . .

forbearing to prosecute an unenforceable claim is no consideration at all."  (*Id.* at Syl. 5.)

> Notwithstanding the settlement agreement, Kannaday could not execute on
> Estate assets because of the bar of the nonclaim statute, K.S.A. 59-2239.
> (*Id.* at 832.)

In a like manner, Kannaday's counsel asserts thirty-three allegations of negligence and bad

faith[6] (Pretrial Order, § 5(a); Doc. 64, pp. 5-8) which begin with garnishee "failed to settle

the claim of the plaintiff against the defendant when garnishee had the opportunity to do

so"[7]  and continue through "GEICO failed to present the defendant's position on appeal

and waived his insulation obtained by his release."[8]  All such GEICO criticisms were raised

after January 14, 2006.  As such, all allegations were presented after the Estate of Hoyt

was fully and completely protected by the non-claim statute in a manner more complete

than any release which could have been executed by Kannaday or her counsel.  Whatever

---

[6]      The thirty-three allegations present a compendium of every GEICO action or activity for which Plaintiff finds criticism, with no attempt to attribute damages, causation or proximate cause.  For example, at least seven such allegations relate to an alleged "conflict of interest" generated by (1) the tri-partite relationship between the insurance company, insured and counsel selected to defend, or (2) defense of *Kannaday* by the same firm which commenced the federal court interpleader.  However, alleged conflicts of interest relate to ethics rules which do not create a cause of action to adverse litigants or even to clients. *Tilzer v. Davis*, 288 Kan. 477, 491-2, 204 P.3d 617 (2009); *Gatlin v. Hartley*, 29 Kan. App. 2d 318, 320, 26 P.3d 1284, 1286 (2001); *Mgmt. Assoc. Inc. v. Miller*, 1994 WL 362206 (Kan. D.C.) ("The violation of a Rule should not give rise to a cause of action nor would it create any presumption that a legal duty has been breached.").

[7]      Actually, case law would place responsibility for the unjustified withdrawal of the settlement demand upon Kannaday. *Wade v. Emcasco*, 483 F.3d 657, 674 (2007) and 2004 WL 5550384 at *10-11.  This is particularly true when no medical records or justification is presented. *Williams v. American Family Mut. Ins. Co.*, 101 F. Supp. 2d 1337 (D. Kan. 2000).

[8]      The appeal, reversal and second trial reduced the judgment from $7,219,064.37 to $4,723,368.60.  GEICO continued to employ the Fleeson Gooing firm to fully defend the Estate of Hoyt through the second trial, verdict and appeal by Kannaday.  Many of the thirty-three allegations criticize litigation activity in the first or the second proceeding.  Again, all such activity occurred well after the January 14, 2006 bar of the Kansas non-claim statute.

GEICO did or did not do throughout the claim settlement and litigation, no harm resulted to the Estate.

In a manner identical to the Ball settlement agreement, the January 19, 2006 settlement proposal by Mr. Hasty presented "no consideration at all"[9] to the Estate because Kannaday's claim upon Estate assets was already barred.  Over the six years following the original Kannaday demand, Kannaday filed suit, obtained an invalid *ex parte* judgment, participated in an appeal of that judgment to the Court of Appeals, requested review by the Kansas Supreme Court, then returned to litigate through a second trial, verdict, and a second Kannaday appeal.  During that entire time, the Kannaday claim and resulting verdicts remained unenforceable against Estate of Hoyt assets.  During that six-year process, the Kansas non-claim statute protected the assets of the Estate of Hoyt from liability for anything GEICO, or the counsel it hired to defend, did or did not do on the Kannaday claim.  None of the thirty-three allegations could create Estate liability.  In the absence of any potential proximate cause between GEICO's defense of the Estate and Estate asset liability, summary judgment for GEICO is appropriate because the actual contractual damages required for bad faith by *Heinson* and *Sours* cannot exist.

### 4.    Judge Lungstrum's 2010 decision supports summary judgment for GEICO.

*Kannaday v. Ball,* 2010 WL 2346368, litigated Kannaday's first garnishment attempt on the $7,219,064.37 *ex parte* judgment which was reversed by the Kansas Court of

---

[9]    44 Kan. App. 2d 65, Syl. 5 (2010).

Appeals.[10]   There, at *7, Judge Lungstrum denied opposing motions for summary judgment, while noting that "plaintiff has utterly failed to show causation as a matter of law with respect to [Kannaday's bad faith and negligence] claims."  Judge Lungstrum's denial of GEICO's motion was based upon the possibility that if the non-claim statutory defense was interpreted differently by the Court of Appeals[11], proximate cause might exist:

> Indeed, in the present case, despite the Estate's assertion of a defense based on the non-claim statute, the state court nonetheless entered a judgment against the Estate.  That judgment might yet be overturned on appeal, but the state court's judgment demonstrates that the possibility of the failure of this defense should be considered by the insurer.  (Id.)

After identifying two cases[12] which implied, but did not state, that the Kansas Court of Appeals might reject the argument that the six-month deadline would insulate and protect all assets from tort claims against the Estate, Judge Lungstrum stated:

> The court need not interpret the non-claim statute at this time or predict how the Kansas Court of Appeals will rule on the Estate's appeal in the selected state-court case.  The point, at this stage is that this defense against liability of the Estate is not so strong as to make GEICO's failure to settle for the policy limits reasonable as a matter of law.

---

[10]   That garnishment proceeding was dismissed without prejudice by Judge Lungstrum (Case No. 2:09-CV-02255-JWL, Doc. 134) after the reversal of Kannaday v. Ball, 44 Kan. App. 2d 65 (2011).

[11]   Kannaday's argument, rejected by the Kansas Court of Appeals at 44 Kan. App. 2d 64 (Syl. 2), was that the Kansas non-claim statute permitted a tort claimant's recovery **from estate assets** anytime within the underlying statute of limitations.  See Case No. 09-CV-02255-JWL, Doc. 108, p. 35.

[12]   Judge Lungstrum identified Bridges v. Bentley, 1989 WL 134939 (D. Kan.) which referenced Gatewood v. Bosch, 2 Kan. App. 2d 474-479, 581 P.2d 1198, 1203 (1978).  Judge Lungstrum did not discuss the more recent cases of Harris v. Richards, 254 Kan. 549, 550-551, 867 P.2d 325, 326 (1994), and Estate of Tracy, 36 Kan. App. 2d 401, Syl. 4-6, 140 P. 3d 1045 (2006), which support GEICO's position and the Kannaday decision of the Court of Appeals.

*Kannaday v. Ball*, 44 Kan. App. 2d 65, 69, 73 (2011), is now the "law of the case." That decision now renders GEICO's argument "so strong" that it requires summary judgment. Judge Lungstrum's decision strongly implied, without specifically stating, that an appellate decision that the non-claim statute limited estate asset liability to six months would be sufficient to grant summary judgment as a matter of law. Causation and proximate cause cannot be demonstrated where Estate assets are conclusively determined to have been protected by the Kansas non-claim statute. That is exactly what the Kansas Court of Appeals decided. The decision is binding upon Kannaday. Summary judgment is now required.

5.     **The Eleventh Circuit has held that protection of estate assets by a non-claim statute precludes bad faith claims.**

The decision predicted by Judge Lungstrum mirrors the decision of the Eleventh Circuit Court of Appeals and Florida Supreme Court in *May v. Illinois Nat'l Ins. Co.*, 190 F.3d 1200 (11th Cir. 1999), a case decided upon almost identical facts. There, Prockup brought suit against Bradley's Estate (of which May was the Administrator) for serious injuries received in an automobile accident fatal to Bradley.    Bradley had a $10,000/$20,000 liability policy with Illinois National.   At trial, Prockup received a $1.1 million judgment against the Bradley Estate on a claim which had not been filed within the prescribed estate claim period of the Florida non-claim statute.   In Florida, as in Kansas, untimely claims against an estate for bodily injury were barred only to the extent they exceeded the limits of the estate decedent's insurance liability coverage.   May, as administrator, brought the bad faith claim against Illinois National to recover the proceeds of Prockup's excess verdict. Florida's United States District Court granted summary

20

judgment to Illinois National, stating that claimant's failure to file a timely claim against the
Estate barred Estate liability under the Florida non-claim statute. Because the Estate was
insulated from liability by operation of law, an excess judgment action could not be
maintained against the decedent's insurer. The Eleventh Circuit was unsure whether the
Florida non-claim provisions operated as "statutes of limitations or statutes of repose or
nonclaim." The Court stated:

> If [the Florida statutes] act as jurisdictional statutes of nonclaim or statutes
> of repose, untimely claims are automatically barred. Prockup would then
> have no claim against the estate, and May would have no basis for its bad
> faith failure to settle suit. (*Id.* at 1206.)

The Court then certified the issue of whether the Florida statute was one of
limitation, repose or nonclaim to the Florida Supreme Court. Upon receiving the Florida
Supreme Court's answer that the non-claim statute barred Bradley Estate liability on the
Prockup claim, the Eleventh Circuit held that the claimant "could no longer assert [a] claim
against probate estate of alleged tortfeasor, so as to preclude any claim by estate against
automobile liability insurer for its alleged bad faith refusal to settle." *May v. Illinois Nat'l Ins.
Co.*, 245 F.3d 1281 (2001). Thus, on a non-claim statute operationally identical to that of
Kansas, the Eleventh Circuit held that the Florida "Supreme Court's decision effectively
bars the claim made against the estate.. . . Accordingly, the summary judgment for Illinois
National Insurance Company, based on the Florida Supreme Court's analysis, is
AFFIRMED." (*Id.* at 1283.) In *May*, using an "actual damages" legal analysis identical to
that of the Kansas Supreme Court in *Heinson* and in *Sours*, *supra*, the Eleventh Circuit
granted summary judgment to the insurer on claims of bad faith where estate liability was

21

barred by the appropriate non-claim statute.  Summary judgment for GEICO should be entered upon identical reasoning.

## B.    GEICO IS NOT REQUIRED TO "RESERVE RIGHTS" TO LIMIT ITS LIABILITY TO CONTRACTUAL POLICY LIMITS.

The above sections present the dispositive reasons why Kannaday's allegations of bad faith and negligence should be dismissed as a matter of law.  That said, one separate and different Kannaday allegation remains which was thoroughly addressed in Judge Lungstrum's earlier decision.  In the first paragraph of Plaintiff's Contentions at Section 5(a) of the Pretrial Order, Kannaday asserts that GEICO was required to issue a written reservation of rights to enforce the Hoyt policy coverage limits:

> Plaintiff contends that GEICO took control of the defense of plaintiff's claim against the Hoyt estate as a result of the accident in question without reserving any rights to decline to pay any judgment or any part of it and that GEICO is liable for the judgment entered in favor of plaintiff and against the defendant, which has formed the basis of this action.

Kannaday's contention reiterates an earlier argument -- an argument unequivocally rejected by Judge Lungstrum in the first federal court garnishment (Case No. 09-2255-JWL).  There, it was the primary argument presented in Kannaday's original memorandum (Case No. 2:09-cv-02255-JWL, Doc. 82, pp. 49-50), which GEICO fully addressed in its opposition (Case No. 2:09-cv-02255-JWL, Doc. 97, pp. 54-60 of 85).  Judge Lungstrum held that an insurer's written reservation of rights is only required where there is a potential denial of coverage and "GEICO did not deny coverage or disclaim its duty to defend its insured."[13]  (2010 WL 2346368 (D. Kan.), at *4.)  Judge Lungstrum presented four

---

[13]    Indeed, GEICO paid its total policy limits through $25,000 to Gold and $25,000 through the federal court interpleader (Case No. 06-1067-JTM), while fully and completely defending the Wyandotte County actions of Wright (Case No. 07CV1170) and Kannaday (Case

additional reasons to reject the argument that a written reservation is required to enforce policy limits:

>    (1)    Kannaday's sole referenced case (*Henry v. Johnson*, 191 Kan. 369, 377 (1963)), addressed a reservation of rights related to a non-coverage defense, hence was not applicable;

>    (2)    No supporting Kansas authority was cited[14] for the proposition;

>    (3)    "Under Kansas case law, 'waiver cannot be used to expand the coverage of an insurance contract;'"[15] and

>    (4)    One leading treatise[16] has flatly rejected any attempt to apply a waiver rule to the enforcement of policy limits. (*Id.* at *3-5.)

There has been no intervening change of facts or law to alter Judge Lungstrum's decision between these parties. Judge Lungstrum's analysis and decision remain appropriate, accurate and correct. Summary judgment should ensue.

_____

No. 06CV497).

[14]    GEICO submits that no supporting Kansas authority exists.

[15]    Citing *Hennes Erecting Co. v. Nat'l Union Fire Ins. Co.*, 813 F.2d 1074, 1078 (10th Cir. 1987), and *Western Food Prod's Co. v. United States Fire Ins. Co.*, 10 Kan. App. 2d 375, 699 P.2d 579, 584 (1985). *See also, Allied Mut. Ins. Co. v. Moeder*, 30 Kan. App. 2d 729, 734, 48 P.3d 1 (2002); *Hillman v. Colonial Penn Ins. Co.*, 19 Kan. App. 2d 375, 377, 869 P.2d 248, rev. denied 255 Kan. 1001 (1994). Moreover, this is the majority rule. *See* Annot. 1 A.L.R.3d 1139.

[16]    Citing 14 COUCH ON INSURANCE 3d, § 202.74 (2005). *See also,* Allen D. Windt's legal commentary at INSURANCE CLAIMS & DISPUTES 6TH, § 2:14 (2009), "An insurer should not be obligated, at the inception of every lawsuit, to go through the exercise of including a rote statement that a judgment might exceed the policy limit. In addition, an insured could not reasonably believe that an insurer will provide a greater dollar amount of coverage than that set forth in the policy."

## V.  SECOND ISSUE

Did the Administrator's execution of the Settlement Agreement/Covenant Not to Execute at a time when the Hoyt Estate's assets were already protected by operation of law, serve to breach the insured's duty of cooperation, thus terminating GEICO's coverage obligations?

## VI.  SECOND STATEMENTS OF UNCONTROVERTED MATERIAL FACT

22.     On September 7, 2006, Lyndon Vix, the attorney hired by GEICO to defend the Estate of Hoyt, forwarded Paul Hasty's proposed Settlement Agreement to Charles Ball.  Mr. Hasty's Settlement Agreement proposed that the Administrator agree to an *ex parte* hearing on damages in return for Kannaday's agreement not to execute on Estate assets.  Vix requested that Charles Ball telephone to discuss the proposal because, at the time of tender, the Kansas non-claim statute already protected the Estate assets. (Doc. 67-6, GCF-0072-0075.)

23.     **On September 20, 2006, Mr. Ball signed and posted the Settlement Agreement to Mr. Vix, without consultation, comment or even a cover letter.**[17] (Doc. 67-13, Vix Depo. 50:17 - 51:19; Doc. 67-8, Ball Depo. of 09/30/09, 76:3 - 79:19; Doc. 67-14, Ball Depo. of 12/27/07, 12:17 - 15:16.)

24.     On October 23, 2006, Mr. Ball filed an Estate Valuation affidavit revealing there were no assets in the Estate of Stephanie Hoyt.  (Doc. 67-9, Estate-0009-14.) Mr. Ball did so solely on the basis of a letter he received from Mr. Hasty. (Doc. 67-15,

---

[17]     Again, while additional paragraphs of uncontroverted fact are provided for context, only the emphasized paragraphs (23, 26-28) are required for summary judgment on the second issue.

Hasty Depo. of 12/18/09, 23:7 - 24:13; Doc. 67-8, Ball Depo. of 09/30/09, 52:12 - 55:6.)

Mr. Ball believes that inventory remains accurate to this day. (Doc. 67-8, Ball Depo. of

09/30/09, 55:13-18.)

25.    On December 21, 2006, Judge R. Wayne Lampson ruled that the Kansas

non-claim statute (K.S.A. 59-2238) prevented any Estate assets from satisfying any

judgment obtainable through the Kannaday petition, due to the filing of the Kannaday claim

after the statutory claim period had run. (Doc. 67-10, Kannaday-0045-46, Memorandum

Decision.)

26.    **On December 27, 2007, in a deposition conducted by Paul Hasty,**
**Charles Ball signed a revised Settlement Agreement, again containing a Covenant**
**Not to Execute against Estate assets in consideration of agreement that Kannaday**
**pursue an *ex parte* judgment.**  (Doc. 67-14, Ball Depo. of 12/27/07, 3:10 - 8:2.)

27.    **The signed Agreement formed the basis of Kannaday's hearing of March**
**18, 2009, which generated the $7,219,064.37 *ex parte* judgment.** *Kannaday v. Ball*, 44
Kan. App. 2d 65, 68, 234 P.3d 826, 829 (2011).

28.    **Each time the Administrator signed the Settlement Agreements, the**
**non-existent assets were immunized by the Kansas non-claim statute; on the second**
**occasion, Judge Lampson's Memorandum Decision of December 21, 2006 formally**
**provided Estate asset immunity.**

## VII. SECOND ISSUE ARGUMENT

**A.    EXECUTION OF THE SETTLEMENT AGREEMENT BREACHED ADMINISTRATOR BALL'S DUTY TO COOPERATE WITH GEICO.**

      **1.    The Administrator's execution of the Settlement Agreement jeopardized GEICO's ability to defend the Kannaday lawsuit.**

Contrary to the advice provided by GEICO's defense counsel to the Administrator, Charles Ball signed the Settlement Agreement/Covenant Not to Execute on September 20, 2006, and again on December 27, 2007.  At the time of each signature, the Kansas non-claim statute barred any Estate liability associated with the Kannaday claim.  On the second occasion, Judge Lampson's Memorandum Decision of December 21, 2006 (Doc. 67-10, Kannaday-0045-46) had ruled that the "assets of the estate cannot be applied to satisfy any judgment rendered."  Ball's execution of the Settlement Agreement gained nothing for the Estate.[18]  By the time of Ball's second execution, GEICO (1) had already tendered its full policy limits to Gold through a federal court interpleader, AND (2) was defending the Kannaday lawsuit, AND (3) was defending the Wright lawsuit.  The Administrator's agreement to the *ex parte* hearing resulted in a judgment of $7,219,064.37[19] which Kannaday used to pursue GEICO.

_____

[18]    *Kannaday v. Ball*, 44 Kan. App. 2d 65 (2011) (Syl. 5 -- ". . . forbearing to prosecute an unenforceable claim is no consideration at all.") (Syl. 6 -- ". . . the settlement agreement between the parties which authorized the plaintiff to proceed to trial *ex parte* and to obtain judgment against the defendant with no further notice to, or involvement by, the defendant was invalid because it was not supported by consideration of any kind.")

[19]    The second trial, which was defended, resulted in a judgment of $4,723,368.60. Simple math indicates that Mr. Ball's act generated an additional potential liability, which could only be satisfied by Kannaday's bad faith garnishment of GEICO, of $2,495,695.77.

26

Mr. Ball's execution of the Settlement Agreement breached his contractual and fiduciary duties to GEICO. Although GEICO continued its defense, any further contractual obligations of GEICO were terminated by the insured's breach of its duties to the insurer. The following sections will address the Administrator's duties, the breach, and its effect upon the insurer's remaining duties under Kansas common law.

**2.    The insured has both a contractual and a "mutual fiduciary" duty to cooperate.**

The insured's duty to cooperate with the insurer in defending against a liability claim arises from two sources: (1) a cooperation clause within the policy, and (2) the mutual fiduciary duties that Kansas common law imposes upon the insurer and its insured.

**a.    GEICO policy imposes a contractual duty to cooperate.**

A copy of the GEICO policy issued on the Hoyt vehicle appears at Doc. 67-3. At page 5 of 19, the cooperation duties are imposed:

The ***insured*** will cooperate and assist us, if requested: . . .

(a)    in the investigation of the occurrence;
(b)    in making settlements;
(c)    in the conduct of suits;
(d)    in enforcing any right of contribution or indemnity against any legally or responsible person or organization because of ***bodily injury*** or property damage;
(e)    at trials and hearing;
(f)    in securing and giving evidence; and
(g)    by obtaining the attendance of witnesses.

Further, the suit against GEICO requires "full cooperation" from the insured:

No suit will lie against us:

(a)    unless the ***insured*** has fully complied with all the policy's terms and conditions, . . . (*Id.*)

27

"The purpose of cooperation clauses is to protect the insurer's interest and prevent collusion between the insured and the injured person." *Watson v. Jones,* 227 Kan. 862, 866-67 (1980). *See also, Continental Cas. Co. v. Multiservice Corp.,* 2009 WL 1788421 at *5 (D. Kan. June 23, 2009)(same).   The Tenth Circuit has noted that cooperation clauses are also designed to eliminate interference with defense efforts, stating:

> The inherent nature of the subject matter of automobile liability insurance necessitates the mutual obligations of cooperation between insured and insurer and [cooperation] clauses . . . have long been recognized as reasonable conditions necessary to protect the insurer against collusive claims, and **prejudicial interference with the defense of any claim**. (Emphasis added).

*Elliott v. Metro. Cas. Ins. Co.,* 250 F.2d 680, 683 (10th Cir. Kan. 1957)(Citations omitted).

*See also, Trader's & Gen. Ins. Co., v. Rudco Oil & Gas Co.,* 129 F.2d 621, 626-27 (10th Cir. Okla. 1942)(The insurer's "right to control the litigation is first and paramount, an essential part of which is the right to insist upon the co-operation of the assured, and **the assured may not interfere by voluntary assumption of liability or by arbitrarily insisting upon settlement of the claims or suits**.")(Emphasis added).

**b.     Kansas imposes a "mutual fiduciary" duty to cooperate.**

In addition to the duty that arises from a policy's cooperation clause, the insured owes a fiduciary duty of cooperation to the insurer.  The same factors that are used to determine whether an insurer acted in good faith also govern the conduct of the insured. *Bollinger v. Nuss*, 202 Kan. 326, 332, 338 (1969).  In *Bollinger,* the Court explained that the insured and insurer owe mutual fiduciary duties to each other:

> Because of possible conflict of interest between an insurance company and
> its insured in the defense or settlement of claims against the insured **there
> is a mutual fiduciary relationship whereby each owes the other the duty
> to exercise reasonable care in conducting such defense or settlement.**
> (Emphasis added.)

*Bollinger v. Nuss*, 202 Kan. 326, 332 (1969), quoting *Bennett v. Conrady*, 180 Kan. 485,

Syl. 5 (1957).

This mutual fiduciary relationship has been acknowledged throughout Kansas case

law.  *See, Spencer v. Aetna Life & Cas. Ins. Co.*, 227 Kan. 914, 921, 611 P.2d 149, 154

(Kan. 1980);  *Bollinger v. Nuss*, 202 Kan. 326, 332, 449 P.2d 502, 508 (Kan. 1969);  *Rector*

*v. Husted*, 214 Kan. 230, 238, 519 P.2d 634, 641 (Kan. 1974);  *Castoreno v. Western*

*Indem. Co., Inc.*,  213 Kan. 103, 109, 515 P.2d 789, 793 (Kan. 1973).  Kansas mutual

fiduciary duties have also been recognized by the Tenth Circuit.  *See, e.g., Coleman v.*

*Holecek*, 542 F.2d 532, 537 (10th Cir. Kan. 1976).  As such, the insured owes the common

law fiduciary duty of cooperation to the insurer, as well as the duty to cooperate as

governed by the policy's cooperation clause.

### c.    Both duties are imposed on the administrator of a decedent's estate.

The administrator of an estate, as the representative of the insured, has a duty to

cooperate with the insurer by using his best efforts to defeat a claim and by defending

against any possible excess judgment.  *See, e.g., Shapero v. Allstate Ins. Co.,* 14 Cal.

App. 3d 433, 436-37 (1971)("Ordinarily an administrator, when sued for the alleged tort of

the decedent, **must use his best efforts to defeat the claim**, to cooperate with the

insurance carrier and **defend against any threatened judgment in excess of policy**

**limits**.")(Emphasis added); *Johnson v. State Farm Mut. Auto. Ins. Co.,* 641 F. Supp. 2d

748, 751-52 (C.D. Ill. 2009)("The Court further finds that Johnson, as Decedent's Administrator, has a duty to cooperate with State Farm in the pending civil matter.").

### 3. Assisting Plaintiff's counsel by executing unfair settlements breached insured's duty to cooperate.

#### a. Assistance to Plaintiff's counsel breaches duty.

An insured clearly violates a cooperation clause when he actively cooperates with plaintiff's counsel. *See, Elliott v. Metro. Cas. Ins. Co.,* 250 F.2d 680, 684 (10th Cir. Kan. 1957)("[The insured's] failure to cooperate with [the insurer] consists not only in his lack of veracity but in his active cooperation with [plaintiff's counsel]."). The *Elliott* Court cited case law in various jurisdictions in support of this doctrine, all of which conclude that under such circumstances, the insurer is justified in denying benefits under the policy. *See, State Farm Mut. Auto. Ins. Co. v. Bonacci,* 111 F.2d 412, 414 (8th Cir. 1940)("If the insured failed actively to cooperate in the defense of the damage actions brought by the Bonaccis, or if he fraudulently conspired with these adverse parties to create the appearance of a valid cause of action against him, then the contractual obligation of the insurer would terminate and the insurance company would be under no obligation to defend the actions, nor to pay any judgment that might be recovered."); *Bagley v. Lumbermens Mut. Cas. Co.,* P.2d 469, 470 (Colo. 1936)(insured not entitled to collect under policy due to providing collusive assistance to plaintiff and plaintiff's attorney, while failing to assist insurer and its defense attorney); *Buckner v. Buckner,* 241 N.W. 342, 345 (Wis. 1932)(directed verdict for insurer denying coverage based on insured's failure to cooperate with insurer and assistance to plaintiff in prosecuting action); *Storer v. Ocean Accident & Guarantee Corp.,* 80 F.2d 470, 472 (1935)(insured's violation of cooperation clause by assisting plaintiff justified insurer's

repudiation of policy); *State Auto. Mut. Ins. Co. v. York,* 104 F.2d 730, 734 (4th Cir. 1939)("In such a case where members of the family corruptly conspire and work together to secure a recovery not justified by the facts, the policy should be and is avoided. . . . The inquiry is . . . whether [the insured] has failed to furnish proper assistance to the company in its defense of the suit or has entered into collusion with the plaintiff to establish liability unfairly."). Based on these cases, the *Elliott* Court concluded that "the cooperation clause will be deemed to be violated if the insured by collusive conduct appears to be assisting the claimant in the maintenance of his suit rather than the insurer." *Elliott* at 684.

### b.    Entering unfair settlement breaches duty.

Breach of the fiduciary duty occurs where the insured enters into an unfair settlement while facing no real detriment from the plaintiff's claim. *See, Sargent v. Johnson,* 551 F.2d 221, 231-32 (8th Cir. 1977). The *Sargent* Court explained how such "bad faith" conduct violates the fiduciary duty owed to the insurer:

> This standard of good faith and mutual respect applies to both parties to the insurance contract. In this case, under the circumstances previously related, we must conclude that the **insured's conduct in discharging defense counsel provided by the insurance carrier and entering into a settlement of the pending litigation without the insurer's consent, even with court approval, constituted a violation of terms of the existing policies. Moreover, the insured not only breached its contract, but acted in bad faith.** Counsel for the insured did not enter into a bargain to settle its liability claims for a fair price, but entered into a questionable collaboration by which the parties maneuvered through terms of a settlement agreement to impose an uncompromised full balance of a judgment upon the insurer, while the insured incurred no real detriment. In light of the questionable validity of the judgment on its face, and the substantial sum obtained outright by Sargent from Ohman, this seems particularly unreasonable. This kind of bargain represents the antithesis of mutual respect for rights. *Id.* (Emphasis added.)

31

An Iowa federal district court reached the same result in a case in which the Administrator of an estate that possessed no assets colluded with plaintiff's counsel by assigning the estate's rights under the policy. *Roach v. Estate of Ravenstein,* 326 F. Supp. 830, 839 (S.D. Iowa 1971). As discussed below, the *Roach* facts are similar to those now before this court.[20] The *Roach* court condemned the Administrator's actions primarily because the estate was not at risk to suffer any harm:

> It is apparent that from the outset any recovery by the Plaintiff would be dependent upon the coverage of the insurance policy. **The Defendant estate has no assets and a judgment against the estate, in the absence of insurance coverage, would be worthless.** The Plaintiff purports to relinquish its right to collect any judgment out of the estate assets as consideration for the Administrator's agreement to the entry of judgment and assignment of all of the estate's rights under the policy. **Since the estate had no assets, which would have been subject to the Plaintiff's judgment, the Plaintiff surrendered nothing by agreeing not to collect its judgment out of the assets of the estate. . . . The Administrator of the defendant estate was without authority to enter in the agreement, the agreement is unconscionable and void for lack of consideration. It was not entered into in good faith. The agreement was controlled by Plaintiff's counsel. Fair dealing and justice will not permit it to stand.** *Id.* (Emphasis added.)

Hence, the Administrator's execution of a Settlement Agreement which provided no benefit to the Estate while eliminating the insurer's ability to defend the claim violated both the contractual and the mutual fiduciary duty of cooperation.

---

[20]    Kansas law holds that an insurer has the duty to defend and to act reasonably and in good faith, even if the insured is insolvent or otherwise judgment proof. *Farmers Ins. Exch. v. Schropp*, 222 Kan. 612, 622-24, 567 P.2d 1359, 1368-69 (1977). However, Judge Lungstrum held the lack of assets may be relevant to other issues. 2010 WL 2346368 at *9. These issues should include a determination of the Administrator's breach of contractual and fiduciary duties. Iowa is also a "judgment rule" state. *Henke v. Iowa Home Mut. Cas. Co.*, 250 Iowa 1123, 97 N.W.2d 168 (1959). Although the *Roach* court determined the administrator to be in breach of contractual and fiduciary duties solely due to the absence of estate assets, the reasoning is even more strong where non-claim statutory immunity exists.

## B.   BREACH OF DUTY TO COOPERATE TERMINATES AN INSURED'S RIGHT TO COVERAGE.

### 1.   An insured's failure to cooperate can terminate insurance coverages.

Like the jurisdictions noted by the Tenth Circuit in *Elliott, supra,* Kansas courts hold that an insured's failure to cooperate can terminate insurance coverage rights. *See, Metro. Cas. Ins. Co. of N.Y. v. Johnston,*146 F. Supp. 5, 8 (D. Kan. 1956). The *Johnston* Court explained that cooperation is a condition of the policy:

> As pointed out by the Court of Appeals for this Circuit, '**co-operation with the insurer is one of the conditions of the policy.  When the condition was broken, the policy was at an end, if the insurer so elected.**' (Emphasis added.)

*Id.,* quoting *United States Fid. & Guar. Co. v. Wyer,* 60 F.2d 856, 858 (10th Cir. 1932). *See also, Jameson v. Farmers Mut. Auto. Ins. Co., Inc.,* 181 Kan. 120, 127 (1957)("failure of co-operation on the part of the insured . . . affects the insurer's duty to defend the insured"); *Elliott v. Metro. Cas. Ins. Co. of N.Y.,* 250 F.2d 680, 683-84 (10th Cir. Kan. 1957)(insurer justified in refusing to defend insured who violated cooperation clause); 8 APPLEMAN, *Insurance Law and Practice,* § 4771 at 214-15 (1981)(A cooperation clause in an insurance contract is generally regarded as a condition precedent, so that no rights accrue unless the condition is satisfied).

### 2.   The Administrator's failure to cooperate terminated the Hoyt Estate's rights under the GEICO policy.

Like the administrator in *Roach, supra,* Mr. Ball assisted Kannaday by entering into a settlement and purported assignment of rights to protect estate assets which were not at risk.  Any judgment against the estate would have been unenforceable.  Only GEICO's policy proceeds were available to satisfy claims.  In short, the attempted assignment

33

bestowed absolutely no benefit to the already protected estate.  *See, Kannaday v. Ball,* 44 Kan. App. 2d 65, Syls. 5 & 6, 73 (2011)("[T]he Estate gained nothing (and Kannaday gave up nothing) by permitting Kannaday to prosecute her bad faith claim against GEICO after entry of proposed consent judgment.").

Like the insured in *Sargent,* Mr. Ball allowed Kannaday to impose a one-sided and unfair judgment on GEICO.  Mr. Ball did so while failing to assist, or even respond to the counsel GEICO retained to defend the Hoyt Estate against Kannaday's claim.  Mr. Ball's conduct prejudiced GEICO and assisted Kannaday in obtaining a large and undefended judgment.  As such, the Administrator's failure to cooperate terminated any remaining Hoyt Estate rights under the GEICO policy.  Ball breached the insurance contract by violating the insurance contract's implied covenant of good faith and fair dealing.

### 3.  Because the Estate's insurance coverage rights were terminated, there was nothing left to assign.

Termination of the insured's rights under a policy vitiates any potential bad faith claim.  *See, e.g., Polselli v. Nationwide Mut. Fire Ins. Co.,* 126 F.3d 524, 530 (3rd Cir. 1997)("Absent a predicate action to enforce some right under an insurance policy, an insured may not sue an insurer for bad faith in the abstract."); *Love v. Fire Ins. Exch.,* 221 Cal. App. 3d 1136, 1152 (1990)(bad faith claim cannot be maintained unless policy benefits are due).  The insured cannot assign a claim which she does not possess.  *See, Nichols v. Marshall,* 491 F.2d 177, 183 (10th Cir. Kan. 1974) ("Under long standing garnishment law in Kansas, once judgment has entered, the judgment creditor then takes the place of the judgment debtor and may take that which the latter could enforce.").  Here, the Hoyt Estate had no bad faith claim to assign to Kannaday because the Estate's rights

under the GEICO policy were terminated due to Ball's failure to cooperate. *Id.* Because the Estate had no contractual entitlement upon which to predicate a bad faith claim, Kannaday only received a voided contractual obligation -- a contractual obligation that, in any event, had been fully and completely satisfied.

## VIII.  CONCLUSION

FIRST, the Hoyt Estate assets were never ever at risk; the Hoyt Estate assets were protected by the Kansas non-claim statute from the very first demand presented by Kannaday. Because Hoyt's assets were never at risk, the "common thread" to Kansas bad faith liability did not exist.  There was no conflict of interest between the insured and the insurer by which the insurer could impose liability upon the insured.  Because the immunity eliminated any potential for actual damages to the Estate, GEICO is entitled to summary judgment on Kannaday's bad faith and negligence claims as a matter of law.

SECOND, GEICO never denied coverage or defenses to any of the claims against Stephanie Hoyt.  GEICO tendered and paid Hoyt's full policy limits, AND tendered and completed a full defense to the Sharon Wright litigation, AND tendered and completed a full defense to the Kannaday litigation.  Despite such actions, the Estate of Hoyt's Administrator, Charles Ball, executed an Agreement by which the non-existent and immune assets of Stephanie Hoyt received a valueless contractual protection in return for an *ex parte* judgment creating potential multi-million-dollar liability against GEICO.  That Settlement Agreement breached the Estate of Hoyt's contractual and mutual fiduciary duties to its insurer.  Breach of those duties terminated any further reciprocal contractual obligations which could conceivably exist.

35

Upon each issue, GEICO is entitled to summary judgment as a matter of law.

SMITHYMAN & ZAKOURA, CHARTERED

By: _____
     Lee M. Smithyman, KS #09391
     Arthur E. Rhodes, KS #17661
     750 Commerce Plaza II
     7400 West 110th Street
     Overland Park, KS 66210
     Telephone:  (913) 661-9800
     Fax:  (913) 661-9863
     Email: lee@smizak-law.com
              art@smizak-law.com

ATTORNEYS FOR GARNISHEE DEFENDANT
GEICO INDEMNITY INSURANCE COMPANY

36

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above document was filed through the Court's ECF system on the 1st day of October, 2013, which will serve a copy electronically upon:

Paul Hasty, Jr.
Hasty & Associates
7101 College Boulevard, Suite 350
Overland Park, KS  66210
Email: phasty@hastyassoc.com

SMITHYMAN & ZAKOURA, CHARTERED

By:_____
Attorneys for Garnishee Defendant
GEICO Indemnity Insurance Company

37