```
IN THE UNITED STATES DISTRICT COURT

    FOR THE DISTRICT OF KANSAS
```

| | |
|---|---|
| RACHEL KANNADAY,                   )<br>                                    )<br>          Plaintiff Garnishor,)<br>                                    )<br>     v.                             )   Case No.12-2742-RDR<br>                                    )<br>CHARLES BALL, Special Administrator)<br>Of the Estate Stephanie Hoyt,       )<br>Deceased                            )<br>                                    )<br>          Defendant,               )<br>                                    )<br>GEICO INDEMNITY INSURANCE COMPANY   )<br>          Garnishee Defendant.)    | |

## MEMORANDUM AND ORDER

This is a garnishment action arising from a negligence claim in state court brought by plaintiff who was seriously injured in a vehicular accident caused by the negligence of Stephanie Hoyt, who died in the accident. Plaintiff/garnishor obtained a judgment in excess of the insurance policy which Hoyt had with GEICO, defendant/garnishee. Thus, plaintiff is a judgment creditor upon a negligence claim against defendant Ball who is the Special Administrator of the Estate of Stephanie Hoyt.

This action has been removed from state court to this court. This case is now before the court upon GEICO's motion for summary judgment and plaintiff's motion for partial summary judgment and to strike expert testimony.

I. RELATED MOTIONS.

Before discussing the motions for summary judgment, the court shall address two related motions. GEICO has filed a motion to strike plaintiff's additional statement of uncontroverted facts which contains over 300 entries, some of which (contrary to Local Rule 56.1) are not concise and seem repetitive. GEICO also contends that the additional statement of uncontroverted facts is not relevant to the legal defense GEICO presents in its motion for summary judgment. The court is to some degree sympathetic to GEICO's argument. GEICO's arguments as to the motions for summary judgment are more concisely and efficiently presented in the court's opinion. But, the court shall deny the motion to strike because the court cannot say that the entire statement of uncontroverted facts is irrelevant or contrary to the local rules, and it would be an unproductive expenditure of time to consider whether to strike only parts of the statement.

Plaintiff has filed a motion for leave to file a sur-reply to GEICO's motion for summary judgment. The court shall deny this motion. Plaintiff seeks leave to file a 33-page brief in order to address two issues raised for the first time in GEICO's reply to plaintiff's response to GEICO's motion for summary judgment and to discuss two cases which were mentioned in

GEICO's original motion for summary judgment.[1] The two issues identified in plaintiff's motion for leave to file a sur-reply are not relevant to the court's decision in this matter. So, a sur-reply is not helpful to the court on those points. A sur-reply is also not warranted for a discussion of the cases mentioned in the motion for leave to file a sur-reply. Plaintiff had a sufficient opportunity to discuss those cases in her response to the motion for summary judgment.

II. SUMMARY JUDGMENT STANDARDS.

Summary judgment is warranted if the materials on record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.CIV.P. 56(a). The court views "all of the facts in the light most favorable to the non-movant and reasonable inferences from the record must be drawn in favor of the non-moving party." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007).

III. UNCONTROVERTED FACTS AND PRIOR HISTORY OF THE CASE.

On July 13, 2005, Stephanie Hoyt was driving her car with three passengers. She improperly attempted to cross both

---

[1] The issues are: 1) whether Sabrina Brantley testified as GEICO's FED.R.CIV.P. 30(b)(6) representative in her deposition and whether her testimony is an admission as to what GEICO employees knew or did not know; and 2) whether the Special Administrator of the Hoyt Estate (Mr. Ball) was a GEICO insured. The cases are: Heinson v. Porter, 772 P.2d 778 (Kan. 1989) and West American Ins. Co. v. RLI Ins. Co., 2009 WL 3327203 (W.D.Mo. 10/8/2009) rev'd in part, 698 F.3d 1069 (8th Cir. 2012).

southbound lanes of traffic on Interstate 35 from the shoulder of the road and was hit broadside by a semi-truck/trailer. She was killed instantly and her passengers - Genevie Gold, Sharon Wright, and Rachel Kannaday (plaintiff/garnishor) - were very seriously injured.

At the time of the accident Hoyt was insured by GEICO Indemnity Company with a policy which had bodily injury liability limits of $25,000 per person and $50,000 per accident. It quickly became apparent that each of the passengers' medical expenses would far exceed the policy limits. The Estate of Stephanie Hoyt had no assets other than the coverage provided by the GEICO insurance policy.

On August 11, 2005, GEICO advised Ms. Hoyt's father that the liability resulting from the accident would far surpass the policy limits. On October 5, 2005, counsel for Ms. Gold proposed that the $50,000 per accident limit of the policy be divided equally among the three passengers. GEICO did not respond to this proposal. On November 4, 2005, GEICO made the following offers: a $25,000 settlement to Ms. Gold; a $12,500 settlement to Ms. Wright; and a $12,500 settlement to Ms. Kannaday. The offer to Ms. Gold was accepted. In December 2005, the $12,500 offer to Ms. Kannaday was repeated by GEICO telephonically and in writing.

On January 19, 2006, plaintiff's attorney (Paul Hasty) sent his initial demand letter requesting the $25,000 policy limits. The letter alleged that plaintiff was the most seriously injured passenger in the Hoyt vehicle. This demand was declined in a letter dated February 22, 2006 written by counsel for GEICO. GEICO again offered to settle plaintiff's claims for $12,500. Plaintiff's counsel reiterated the demand for $25,000 in a letter dated February 24, 2006. On February 27, 2006, Hasty sent a letter withdrawing the $25,000 policy limits demand. The same law firm representing GEICO was assigned by GEICO to represent the Estate of Stephanie Hoyt.

On March 17, 2006, plaintiff petitioned for the appointment of Charles Ball as the Special Administrator of the Estate of Stephanie Hoyt. Also on March 17, 2006, plaintiff filed suit against the Estate of Stephanie Hoyt in Wyandotte County District Court. Ball was appointed Special Administrator on May 4, 2006.

On March 23, 2006, GEICO, represented by the same attorney as was representing the Hoyt Estate, filed an interpleader action before Judge Marten in federal district court for the District of Kansas, naming plaintiff, Ms. Wright, and the truck driver and truck company involved in the accident, as potential lien claimants to the proceeds of the insurance policy GEICO issued to Hoyt. On February 21, 2008, Judge Marten awarded

5

GEICO's $25,000 (the remainder of the policy's $50,000 per accident limit) to Wesley Medical Center for its hospital lien as to plaintiff's medical expenses.

On August 17, 2006, counsel for the Hoyt Estate forwarded a proposed settlement agreement from plaintiff to Charles Ball, the Special Administrator. The settlement proposal provided that Mr. Ball agree to an ex parte hearing on damages in return for plaintiff's agreement not to execute on Estate assets. Mr. Ball signed and posted the settlement agreement to the Estate's attorney, but it was not forwarded to plaintiff's counsel.

On October 23, 2006, Mr. Ball filed an estate valuation affidavit indicating there were no assets in the Estate of Stephanie Hoyt.

On December 21, 2006, Kansas District Court Judge R. Wayne Lampson ruled that the Kansas non-claim statute (K.S.A. 59-2238) prevented any Estate assets from satisfying any judgment obtainable through plaintiff's petition, due to the filing of plaintiff's claim after the period for such claims under the non-claim statute had run. On December 27, 2007, Mr. Ball signed a revised settlement agreement which again included a covenant not to execute against Estate assets in consideration of an agreement that plaintiff pursue an ex parte judgment. This agreement provided the basis for an ex parte state court hearing conducted on March 18, 2009 which resulted in a

$7,219,064.37 judgment in favor of plaintiff against the Hoyt Estate.

Counsel for the Hoyt Estate appealed the judgment to the Kansas Court of Appeals. While that appeal was pending, on April 21, 2009, plaintiff filed a garnishment action (like the current action) against GEICO in state court and the action was removed to federal court on May 12, 2009 and assigned to Judge Lungstrum of this court. Judge Lungstrum denied cross-motions for summary judgment on June 9, 2010. Kannaday v. Ball, 2010 WL 2346368 (D.Kan. 6/9/2010).

Shortly after Judge Lungstrum's decision, the Kansas Court of Appeals ruled upon the Hoyt Estate's appeal of the state court judgment. Kannaday v. Ball, 234 P.3d 826 (Kan.App. 2010). The Estate argued that plaintiff's claim against the insurance proceeds was barred by the federal court's decision in the interpleader action and that plaintiff's claim for any amount in excess of the insurance proceeds was barred by the failure to comply with the Kansas non-claim statute, K.S.A. 59-2239.

K.S.A. 59-2239 states that:

(1) All demands . . . against a decedent's estate . . . . shall be forever barred from payment unless the demand is present within the later of: (a) four months from the date of first publication of notice; or (b) if the identity of the creditor is known or reasonably ascertainable, 30 days after actual notice was given . . . . No creditor shall have any claim against or lien upon the property of a decedent other than liens existing at the date of a decedent's death,

7

> unless a petition is filed for the probate of the decedent's will . . . or for the administration of the decedent's estate . . . within six months after the death of the decedent and such creditor has exhibited the creditor's demand in the manner and within the time prescribed by this section, except as otherwise provided by this section.
>
> (2) Nothing in this section shall affect or prevent the enforcement of a claim arising out of tort against the personal representative of a decedent within the period of the statute of limitations provided for an action on such claim. For the purpose of enforcing such claims, the estate of the decedent may be opened or reopened, a special administrator appointed, and suit filed against the administrator within the period of the statute of limitations for such action. Any recovery by the claimant in such action shall not affect the distribution of the assets of the estate of the decedent unless a claim was filed in the district court within the time allowed for filing claims against the estate under subsection (1) . . .

The Kansas Court of Appeals held that plaintiff failed to present her demand within the time limitations set forth in subsection (1) of the non-claim statute and therefore, by operation of subsection (2), she could not demand that the Estate pay her claim from the assets of the Estate. 234 P.3d at 830. The court further held, however, that the liability insurance policy did not constitute assets of the Estate and so the non-claim statute did not bar a claim against the assets of the decedent's liability insurance carrier – GEICO. 234 P.3d at 831. Nevertheless, the court reversed the judgment for plaintiff on the grounds that the settlement agreement between plaintiff and the Hoyt Estate was void for lack of

8

consideration. The court found that plaintiff's promise not to collect any judgment against the Estate was worthless because she was already barred from proceeding against the Estate's assets by the non-claim statute. 234 P.3d at 832. Review was denied by the Kansas Supreme Court. Thereafter, the garnishment action before Judge Lungstrum was dismissed without prejudice.

On May 23, 2012, after a trial on remand from the Kansas Court of Appeals, a judgment in favor of plaintiff was entered against the Hoyt Estate in the amount of $4,723,368.60. After this judgment was entered, plaintiff brought the garnishment action currently before the court and alleges that GEICO breached its duty to the Hoyt Estate to perform its contractual obligations under the insurance policy reasonably and in good faith. The pretrial order lists a large number of claims of bad faith or negligence. They include that GEICO failed to settle the claim against the Hoyt Estate within the policy limits; that GEICO established and continued a conflict of interest involving counsel for the Hoyt Estate; and that GEICO failed to try to protect the interests of the Estate in order to protect its own interests in the interpleader action.

The only damages alleged in the final pretrial order are: the amount of the judgment entered against the Hoyt Estate - $4,723,368.60 - plus interest; attorney's fees under K.S.A. 40-908 and 40-256; and costs in bringing this action.

9

IV. THE OPERATION OF THE NON-CLAIM STATUTE DOES NOT REQUIRE SUMMARY JUDGMENT FOR GEICO.

GEICO makes two arguments for summary judgment. First, GEICO contends that plaintiff's bad faith and negligence claims should be dismissed because they are, in effect, barred by the non-claim statute.[2] We reject this argument because it does not accord with our reading of the non-claim statute and the application of the "judgment rule."

To reiterate, plaintiff obtained a judgment in excess of the insurance policy which Hoyt had with GEICO. Thus, plaintiff is a judgment creditor upon a negligence claim against defendant Ball who is the Special Administrator of Estate of Stephanie Hoyt. If the facts support a claim of bad faith by the insured Estate against GEICO, then plaintiff may bring such a claim, standing in the position of the Estate.

In Nichols v. Marshall, 491 F.2d 177, 183 (10th Cir.1974), the Tenth Circuit Court of Appeals explained:

> "Under long standing garnishment law in Kansas, once judgment has entered, the judgment creditor then takes the place of the judgment debtor and may take that which the latter could enforce. Burlington & M.R.R. Co. v. Thompson, 31 Kan. 180, 1 P. 622 (1884). So, there is no doubt but that a judgment creditor in a typical personal injury case where the tort-feasor is alive, and not deceased, may proceed by garnishment against the tort-feasor's insurer to satisfy within policy limits the judgment obtained against the tortfeasor. And Kansas courts have gone a step farther

---

[2] The parties do not attempt to distinguish plaintiff's bad faith and negligence claims and neither shall the court. They shall be treated as one and the same.

10

> and have held that a judgment creditor may proceed by garnishment against a tort-feasor's insurer for the unpaid balance of the judgment which is in excess of the policy limits where the insurer refused to settle within policy limits by virtue of negligence or bad faith, the courts holding that such claim sounds in contract and is subject to garnishment even though unliquidated. Gilley v. Farmer, 207 Kan. 536, 485 P.2d 1284 (1971), and Bollinger v. Nuss, 202 Kan. 326, 449 P.2d 502 (1969)."

(emphasis added). No assignment of the bad faith claim from the judgment debtor is required. Moses v. Halstead, 581 F.3d 1248, 1254-55 (10th Cir. 2009). Once judgment is entered, the judgment creditor is "'a third-party beneficiary of the underlying contract of insurance entitled to assert a claim arising from a breach of the insurance company's duty to exercise reasonable care and good faith in efforts to settle a claim against its insured.'" Id. at 1255 (quoting Johnson v. Westhoff Sand Co., 62 P.3d 685, 699 (Kan.App. 2003)). Thus, plaintiff is entitled to assert as damage to plaintiff's interests, the alleged breach of GEICO's duty to exercise reasonable care and good faith in settlement efforts. Included in that good faith duty is the obligation to avoid exposing the Hoyt Estate to excess liability by refusing to settle for the policy limits.

GEICO contends that plaintiff may not proceed with a bad faith claim against GEICO because the Hoyt Estate suffered no damages and could not have suffered any damages from GEICO's

11

alleged negligence and bad faith conduct because of the operation of the Kansas non-claim statute, K.S.A. 59-2239.

GEICO asserts, without dispute, that any demand plaintiff made upon the Hoyt Estate happened after the time limits set forth in subsection (1) of the non-claim statute. GEICO argues that pursuant to subsection (2), any recovery could not "affect the distribution of the assets of the estate," and therefore, plaintiff cannot demonstrate an essential element of a bad faith claim, i.e., damages to the Hoyt Estate.

Plaintiff's bad faith claim is obviously not a claim against the Hoyt Estate or the Hoyt Estate assets. Yet, GEICO argues in this case that the operation of the non-claim statute – which was passed to protect Estate assets from belated claims - bars plaintiff's potential recovery against GEICO because its provisions in subsection (2) bar untimely claims from being paid by Estate assets.

This argument appears to run contrary to the first sentence of subsection (2) of the non-claim statute: "Nothing in this section shall affect or prevent the enforcement of a claim arising out of tort against the personal representative of a decedent within the period of the statute of limitations provided for an action on such claim." Plaintiff is proceeding by garnishment against a tort-feasor's insurer for the unpaid balance of the judgment against the representative of the Hoyt

12

Estate, where the judgment is in excess of the policy limits and the insurer allegedly refused to settle within policy limits allegedly because of negligence or bad faith. GEICO's position, if adopted by the court, would force the conclusion that the subsection (2) of the non-claim statute prevents the enforcement of plaintiff's bad faith claim. Since the bad faith claim (according to the court in Nichols) may be seen as arising from plaintiff's enforcement of a tort claim against the Hoyt Estate and is not directed against the Estate's assets, the bad faith claim (according to the first sentence of subsection (2)) should not be affected or prevented by the operation of the non-claim statute. Thus, we hold that GEICO's argument is contrary to the non-claim statute.

This holding is consistent with the ruling in Pistalo v. Progressive Casualty Ins. Co., 983 N.E.2d 152 (Ind.App. 2012) in which the provisions of a similar non-claim statute were considered.[3]

This holding is also consistent with the judgment rule as applied in Kansas. Damages are a required element of a bad faith claim. Wade v. EMCASCO Ins. Co., 483 F.3d 657, 673 (10th

---

[3] Defendant has cited the result in May v. Illinois National Ins. Co., 190 F.3d 1200 (11th Cir. 1999). The non-claim statute in that case (from Florida) appears distinguishable because it does not contain language similar to the first sentence in subsection (2) of K.S.A. 59-2239. The court would also note that the result in Goettel v. Estate of Ballard, 234 P.3d 99 (Mont. 2010) is similar to the result we reach in this opinion, but the language of the non-claim statute does not appear similar to the Kansas statute.

Cir. 2007). But, under the judgment rule, the judgment against the Hoyt Estate is considered sufficient alone to demonstrate damages. Both sides agree that Kansas follows the "judgment rule" which provides that payment of an excess judgment is not necessary before an insured party may bring a bad faith claim. See Kannaday, 2010 WL 2346368 at *9 (citing Farmers Ins. Exch. v. Schropp, 567 P.2d 1259, 1268-69 (Kan. 1977) and Glenn v. Fleming, 799 P.2d 79, 91-92 (Kan. 1990)). Thus, a bad faith claim to recover an excess judgment may go forward even though the insured is bankrupt or insolvent and has not and cannot pay the excess judgment. In other words, it is not necessary for plaintiff to prove that the Hoyt Estate suffered financial damages from an excess judgment.

The judgment rule was adopted to encourage the good faith performance of an insurance contract regardless of the financial circumstances of the insured. Schropp, 567 P.2d at 1369. This policy is not directly involved here because the non-claim statute operates without regard to the amount of assets in an estate. But, the result in this case is in accord with two interests recognized in this area of the law: "'(1) the public interest in encouraging settlements, and (2) fairness, that is equalization of the contenders' strategic advantages.'" Glenn, 799 P.2d at 93 (quoting Critz v. Farmers Ins. Group, 41 Cal.Rptr. 401, 408 (Cal.App. 1964)).

14

Settlements may be encouraged if insurance companies are aware that their obligation to perform in good faith is still as strong even if a claim against the insured's estate was not filed in time to impact the assets of the estate. In addition, this construction of the non-claim statute will avoid giving an insurance company a strategic advantage in negotiations when the time limit for filing a demand against an estate has been missed. GEICO seeks to limit our view in this case to whether the insured suffered damages. Our examination of the non-claim statute in this situation, however, should not be so constricted as to ignore plaintiff's interests as a third-party beneficiary to the insurance contract who is also a claimant against an estate.

In summary, we reject GEICO's argument that the bad faith claim should be dismissed because of the operation of the non-claim statute. We find this argument at odds with the language of the non-claim statute and the application and policy of the judgment rule.[4]

V. MATERIAL ISSUES OF FACT BAR SUMMARY JUDGMENT ON THE BASIS OF AN ALLEGED BREACH OF THE DUTY TO COOPERATE.

---

[4] Plaintiff also argues that GEICO cannot refuse to pay the excess judgment in this case because it took control of the defense of the Hoyt Estate and did not reserve its right to refuse to pay whatever judgment was entered. This argument was rejected when plaintiff presented it to Judge Lungstrum, who found that GEICO, merely by defending the case without a reservation of rights, did not obligate itself to pay any judgment that may be recovered. Kannaday, 2010 WL 2346368 at *4-5. We agree with Judge Lungstrum.

15

The court will not spend much time discussing GEICO's second argument for summary judgment which is that the Special Administrator of the Hoyt Estate breached his duty to cooperate with GEICO and therefore waived the Estate's rights under the insurance policy. GEICO asserts that the duty to cooperate was breached when Mr. Ball signed settlement agreements and covenants not to execute in September 2006 and December 2007 against the advice of counsel GEICO provided to Mr. Ball. The settlement agreement provided the basis for the ex parte hearing which resulted in a judgment of $7,219,064.37 against the Hoyt Estate. That judgment led to the first garnishment proceeding against GEICO, which was ultimately dismissed after the Kansas Court of Appeals held, upon appeal by the Hoyt Estate, that the judgment was not supported by consideration. GEICO contends that Mr. Ball's failure to cooperate terminated his rights under the insurance policy. Therefore, GEICO argues that plaintiff has no rights as a judgment creditor standing in the shoes of the Hoyt Estate.

Plaintiff responds, in part, that the settlement agreement was overturned and GEICO is now in the same position it would have been if Mr. Ball had not signed the agreement. So, plaintiff contends that GEICO suffered no prejudice from the alleged breach of the duty to cooperate.

The Kansas Court of Appeals has stated that a breach of the duty of cooperation will not relieve an insurer of its duty of performance unless the breach causes "substantial prejudice" to the insurer's ability to defend itself. Boone v. Lowery, 657 P.2d 64, 70 (Kan. App. 1983). The term "substantial prejudice" may be somewhat unclear. But, in Boone, the court remarked that: "The insurer must establish at the very least that if the cooperation clause had not been breached there was a substantial likelihood that the trier of fact, in an action against the insured, would have found in the insured's favor." 657 P.2d at 72. The type of prejudice described by GEICO in this case is the effort and expense required to successfully appeal the ex parte judgment initially granted in favor of plaintiff. That time and money, however, does not appear to be comparable to the kind of prejudice which would have destroyed a substantial likelihood of success for the Hoyt Estate on plaintiff's negligence claim. To begin with, no one has alleged that the Hoyt Estate ever had a substantial likelihood of success on that claim. Thus, it seems unlikely that the prejudice alleged by GEICO should be considered a complete defense to the bad faith claim.[5] Support for this view can be found in Cessna Aircraft

---

[5] Perhaps a damages claim for partial breach of the insurance contract could be asserted under these circumstances, but GEICO is not raising such a claim in this case. See Insurance Co. of State of Pa. v. Associated Int'l Ins. Co., 922 F.2d 516, 525 (9th Cir. 1991)(in a reinsurance context, indicating authority exists for insurers to collect money damages proximately caused by

17

Co. v. Hartford Acc. & Indem. Co., 900 F.Supp. 1489, 1515 n.34 (D.Kan. 1995) where, considering an alleged breach of the duty to provide timely notice, the court agreed with the proposition that an insurer must show "prejudice as to its ability to defend the underlying claim." The court in Cessna also considered insurers' claims that the insured breached policy provisions prohibiting unapproved settlements. The court denied summary judgment for the insurers finding that there were genuine issues of material fact as to whether the insurers were actually caused prejudice by the unapproved settlements and agreements to pollution remediation costs. 900 F.Supp. at 1516-18. It is not clear to the court that GEICO has suffered prejudice from the alleged breach of the duty of cooperation that would be recognized as sufficient under Kansas law to provide a defense to plaintiff's claims. Therefore, the court will reject GEICO's second argument for summary judgment.[6]

VI. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO STRIKE EXPERT TESTIMONY.

Plaintiff has filed a motion for partial summary judgment asking that the court rule as a matter of law that 1) when a claim is asserted against an insured that is in excess of the

---

late notice of a claim); Security Mut. Cas. Co. v. Century Cas. Co., 531 F.2d 974, 978 (10th Cir. 1976)(same).

[6] Plaintiff has also argued that any alleged breach of the insured's duties under the policy are excused by GEICO's prior breach of its duty of good faith. We do not reach this issue because the question of whether GEICO breached its duty of good faith cannot be decided at this time.

18

insured's liability insurance limit, a conflict of interest exists between the insurance company and the insured; and 2) the liability insurance company has a duty to protect the insured from judgment and whether the insured pays, can pay, or is required to pay the judgment is irrelevant. Plaintiff also asks the court to strike expert testimony either upon the grounds that it is contrary to Kansas law or on the grounds that it is an improper legal opinion or conclusion better reserved for the court's decision. GEICO opposes the motion for various reasons and the debate between plaintiff and GEICO on this matter frequently draws upon the same arguments that were made in connection with GEICO's motion for summary judgment.

The court shall deny the motion for partial summary judgment without prejudice. The motion seeks legal and evidentiary rulings in advance of trial that might be better made with the aid of trial briefs or better made closer to trial, during the trial, or even after the trial when the court is formulating findings of fact and conclusions of law.

VII. CONCLUSION.

In summary, GEICO's motion for summary judgment (Doc. No. 66) shall be denied. Plaintiff's motion for partial summary judgment and to strike expert testimony (Doc. No. 65) shall be denied without prejudice. GEICO's motion to strike (Doc. No.

76) shall be denied.  Finally, plaintiff's motion for leave to file a sur-reply (Doc. No. 81 Doc. No. 80) shall be denied.

**IT IS SO ORDERED.**

Dated this 9th day of January, 2014, at Topeka, Kansas.

_s/Richard D. Rogers___
Richard D. Rogers
United States District Judge